IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

FOSTER CABLE SERVICES, INC.
d/b/a U-PAS                                                                                                  PLAINTIFF

v.                                          Case No. 1:18-cv-1049

JAMES ERIC DEVILLE and
T&D SOLUTIONS[1]                                                                                        DEFENDANTS

## ORDER

Before the Court is Defendants James Eric Deville and Volt Power's Motion for Judgment on the Pleadings. (ECF No. 15). Plaintiff Foster Cable Services, Inc. filed a response.[2] (ECF No. 17). The Court finds the matter ripe for consideration.

## I. BACKGROUND

Plaintiff is the former employer of Defendant Deville. On February 12, 2017, Plaintiff entered into a confidentiality agreement (the "Agreement") with Defendant Deville. The Agreement states that any information exchanged between Plaintiff and Defendant Deville is proprietary and has been designated as a trade secret and/or confidential. The Agreement gives examples of such covered information as including, "but is not limited to: [Plaintiff's] concepts, drawings, designs, and other related proprietary information." (ECF No. 3, p. 5). Under the

---

[1] Defendants indicate that Defendant T&D Solutions merged with Volt Power, LLC on April 30, 2018, and that the surviving entity is properly identified as "Volt Power, LLC." (ECF No. 1, p. 1). For ease of reference, the Court will hereby refer to Defendant T&D Solutions as "Defendant Volt Power" throughout this order.

[2] The Court notes that Defendants filed the instant motion on November 29, 2018. The Local Rules of the United States Court for the Eastern and Western Districts of Arkansas provide that a response to a motion must be filed within fourteen days of the date the motion is filed. Local Rule 7.2(b). Thus, Plaintiff's response was due on or before December 14, 2018. Plaintiff filed its response to the instant motion on December 28, 2018, two weeks late. Plaintiff did not first seek leave to file its response out of time, and the Court granted no such leave. However, Defendants have not objected to the untimely filing and, thus, the Court, in its discretion, excuses Plaintiff's failure to respond within the time provided by the Local Rules. *See Silberstein v. I.R.S.*, 16 F.3d 858, 860 (8th Cir. 1994) (authorizing federal district courts to overlook violations of their local rules).

Agreement, Defendant Deville agreed to keep any covered information confidential and to not disclose it to any other party. (ECF No. 3, p. 5). The Agreement states that Defendant Deville's confidentiality obligations survive the termination of the Agreement and shall have no time limit, except as otherwise provided for in the Agreement. The Agreement does not, however, set out any time or geographical limitations.

While employing Defendant Deville, Plaintiff underwent negotiations with Claiborne Electric[3] to provide services under a pole and line maintenance agreement. On March 1, 2017, Defendant Deville left his employment with Plaintiff and began employment with Defendant Volt Power. Shortly thereafter, Claiborne Electric removed Plaintiff as an engineering vendor and discontinued negotiations with Plaintiff. Plaintiff alleges that Defendant Volt Power subsequently obtained a maintenance agreement with Claiborne Electric because of Defendant Deville's "disclosure of the potential client, pricing, and other proprietary information as precluded by the [Agreement.]" (ECF No. 3, p. 2).

On June 15, 2018, Plaintiff initiated this lawsuit against Defendants in the Circuit Court of Union County, Arkansas. Plaintiff asserts claims of breach of contract, tortious interference with a contract, and conversion, all stemming from Defendant Deville's alleged disclosure of information protected by the Agreement to Defendant Volt Power. On July 26, 2018, Defendants removed the case to this Court.

On November 29, 2018, Defendants filed the instant motion for judgment on the pleadings, arguing that the Agreement is unenforceable as a matter of law and that Plaintiffs' claims all fail and should be dismissed. Plaintiff opposes the motion.

---

[3] Claiborne Electric is not a party to this action.

## II. LEGAL STANDARD

A party may move for judgment on the pleadings after the pleadings have closed. Fed. R. Civ. P. 12(c). In deciding a Rule 12(c) motion, courts apply the same legal standard used for a motion to dismiss under Rule 12(b)(6). *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). A pleading must state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard and to survive a Rule 12(b)(6) motion, a complaint need only state factual allegations sufficient to raise a right to relief above the speculative level that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Courts deciding a Rule 12(c) motion are required to accept as true the complaint's well-pled allegations and must resolve all inferences in the plaintiff's favor. *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006). However, this tenet does not apply to legal conclusions, "formulaic recitation of the elements of a cause of action," or naked assertions which are so indeterminate as to require further factual enhancement. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Wishnatsky*, 433 F.3d at 610.

When considering a motion for judgment on the pleadings, a court must generally ignore all materials outside the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). However, courts may consider "some materials that are part of the public record or do

not contradict the complaint . . . as well as materials that are necessarily embraced by the pleadings." *Id.* (internal quotation marks omitted).

### III. DISCUSSION

Defendants argue that the Agreement is an unreasonable and unlawful restraint of trade and, as such, is unenforceable. Thus, Defendants argue that Plaintiff's claims all fail, as they are premised on the existence of a valid underlying contract, of which there is none. Plaintiff argues in response that the instant motion should be denied as premature because the pleadings have not closed, the parties have not filed their Joint Rule 26(f) Report, and the parties have not conducted any discovery. Plaintiff does not, however, respond to the substance of Defendants' arguments for dismissal.

As a preliminary matter, the Court will address Plaintiff's arguments that the instant motion should be denied as premature. Then, if necessary, the Court will take up Defendants' arguments for dismissal.

#### A. Whether the Motion is Premature

Plaintiff presents various arguments that the instant motion is premature. First, it contends that the Court should deny the instant motion because the pleadings were not closed at the time Defendants filed the instant motion.

A party may file a motion for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "The pleadings are 'closed' after the complaint and answer are filed, along with any reply to additional claims asserted in the answer." *Hesford v. Jefferson Capital Sys.*, No. 18-CV-100-CJW, 2019 WL 124823, at *1 (N.D. Iowa Jan. 7, 2019); *see also* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2018) ("[P]leadings are closed upon the filing of a complaint and an answer (absent

4

a court-ordered reply), unless a counterclaim, cross-claim, or third-party claim is interposed, in which event the filing of a reply to a counterclaim, cross-claim answer, or third-party answer normally will mark the close of the pleadings.") (internal footnote omitted).

Defendants answered Plaintiff's complaint prior to filing the instant motion and Defendants' answer did not assert any additional claims. Thus, the pleadings closed upon the filing of Defendants' answer, and the instant motion is procedurally proper. *Hesford*, 2019 WL 124823, at *1. As such, the Court finds that the instant motion should not be denied as premature based on the pleadings not being closed.

Second, Plaintiff argues that the instant motion is premature because the parties have not filed their Joint Rule 26(f) Report.[4] Plaintiff cites no authority for the proposition that a Rule 12(c) motion cannot be filed prior to the submission of the parties' Joint Rule 26(f) Report, and the Court is unaware of any such authority. To the Court's knowledge, the only procedural barrier Rule 26 may present is that parties generally cannot conduct formal discovery before conferring pursuant to Rule 26(f). *See* Fed. R. Civ. P. 26(d)(1). However, this limitation is of no import as to whether the instant motion is premature because a Rule 12(c) motion may be filed at any time after the pleadings close. As discussed above, the pleadings closed in this case before Defendants filed the instant motion, and, thus, the instant motion should not be denied as premature based on the timing of the parties' Joint Rule 26(f) Report.

Finally, Plaintiff argues that the instant motion should be denied as premature because the parties have not yet had the opportunity to conduct discovery. The Federal Rules of Civil Procedure authorize courts to delay a ruling in certain instances to allow parties to conduct additional discovery. *See* Fed. R. Civ. P. 56(d) (permitting courts to continue a ruling on a motion

---

[4] The Court notes that the parties filed their Joint Rule 26(f) Report on the same day that Plaintiff filed its opposition papers to the instant motion.

5

for summary judgment if the parties have not conducted adequate discovery). However, Plaintiff cites no authority providing for the use of Rule 56(d)—or any other, similar rule—on a motion for judgment on the pleadings, and the Court is unaware of any such authority. Even assuming *arguendo* that Rule 56(d) is applicable to delay a ruling on a Rule 12(c) motion, courts may only delay a ruling to allow for discovery if the requesting party "shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition." *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 836 (8th Cir. 2015). Plaintiff has not provided an affidavit or declaration to this effect, nor has it stated any facts which it hopes to uncover in discovery to allow it to better respond to the instant motion. *See Beal v. Old Reliable Cas. Co.*, No. 4:14-cv-4079-PKH, 2014 WL 4230851, at *2 (W.D. Ark. Aug. 26, 2014). Accordingly, the Court finds that the instant motion should not be denied as premature based on the parties' lack of discovery.

In sum, the Court finds that Plaintiff's arguments that the instant motion should be denied as premature are misplaced. Thus, the Court will now turn to the merits of Defendants' motion.

### B. Whether Dismissal is Appropriate

Defendants argue that the Agreement is an unreasonable and unlawful restraint of trade and, as such, is unenforceable. Thus, Defendants argue that Plaintiff's claims fail, as they are premised on the existence of a valid underlying contract, of which there is none. The Court will now separately address whether dismissal is proper as to each of Plaintiff's claims.

#### 1. Breach of Contract

Plaintiff asserts that Defendant Deville breached the Agreement[5] by disclosing confidential

---

[5] The Court may consider the Agreement—which is the subject matter of this breach of contract claim—because it was attached to Plaintiff's complaint and, thus, is necessarily embraced by the pleadings. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526-27 (8th Cir. 2017).

6

information covered by the Agreement after leaving Plaintiff to work for Defendant Volt Power. Defendants argue that the Agreement is an unreasonable and unlawful restraint of trade and, thus, is unenforceable.

Federal district courts sitting in diversity, like the Court in this case, must apply the forum state's substantive law. *Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir. 2007). A valid breach-of-contract claim under Arkansas law requires the assertion of: (1) the existence of a valid and enforceable contract; (2) an obligation on the part of the defendant, (3) a breach of that obligation; and (4) damages resulting from the breach. *Rabalaias v. Barnett*, 284 Ark. 527, 528-29, 683 S.W.2d 919, 921 (1985). Defendants assert that the first element—the existence of a valid and enforceable contract—is missing in this case and, thus, Plaintiff's breach-of-contract claim fails.

As a preliminary matter, the Court must address the standard to be used to determine the validity and enforceability of the Agreement. Defendants state that the Court should analyze the Agreement—and find it unenforceable—using the "reasonable restraint" analysis used in Arkansas for covenants not to compete.[6] Plaintiff offers no response or objection to this assertion.

Arkansas caselaw is not particularly well developed regarding how courts should determine whether a confidentiality agreement is enforceable. However, it appears that Arkansas courts use the same test to determine whether confidentiality agreements and non-compete agreements are enforceable. *See, e.g.*, *Alltel Commc'ns, LLC v. DeJordy*, No. 4:10-cv-0130-BSM, 2011 WL 672003, at *3 (E.D. Ark. Feb. 17, 2011) (applying Arkansas law and using the "reasonable restraint" test to separately examine the enforceability of a non-compete contract and a confidentiality agreement); *City Slickers, Inc. v. Douglas*, 73 Ark. App. 64, 73, 40 S.W.3d 805,

---

[6] The record before the Court indicates that Plaintiff and Defendant Deville executed a confidentiality agreement—the Agreement—but nothing indicates that they also executed a covenant not to compete.

7

812 (2001) (affirming the trial court's finding that a challenged nondisclosure agreement was unenforceable as an overly broad, unreasonable, and unlawful restraint of trade). Accordingly, the Court will examine the Agreement using applicable Arkansas caselaw regarding the enforceability of covenants not to compete.

Covenants not to compete are not generally favored by Arkansas law. *Duffner v. Alberty*, 19 Ark. App. 137, 139 (1986). The party challenging the validity of a covenant bears the burden to show that the covenant is unreasonable and contrary to public policy. *Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 254, 987 S.W.2d 722, 726 (1999). "In order for a non-compete agreement to be valid, three requirements must be met: (1) the covenantee must have a valid interest to protect; (2) the geographical restriction must not be overly broad; and (3) a reasonable time limit must be imposed." *Freeman v. Brown Hiller, Inc.*, 102 Ark. App. 76, 81, 281 S.W.3d 749, 754 (2008). All three of these factors must be present to create a valid non-compete agreement, as the law will not enforce a contract that serves merely to prohibit ordinary competition. *Duffner*, 19 Ark. App. at 139. The validity of a covenant is determined on a case-by-case basis. *Evans Labs., Inc. v. Melder*, 262 Ark. 868, 870, 562 S.W.2d 62, 63 (1978).

"The restraints imposed by a covenant not to compete must not be broader than necessary to protect the covenantee's interests." *Statco Wireless, LLC v. Sw. Bell Wireless, LLC*, 80 Ark. App. 284, 298, 95 S.W.3d 13, 21 (2003). "If a covenant prohibits the covenantor from engaging in activities which are unnecessary to protect the promise, the covenant is unreasonable." *Id.* "The test of reasonableness of contracts in restraint of trade is that the restraint imposed upon one party must not be greater than is reasonably necessary for the protection of the other and not so great as to injure a public interest." *Burleigh v. Ctr. Point Contractors, Inc.*, 2015 Ark. App. 615, 7, 474 S.W.3d 887, 891 (2015).

8

Arkansas courts "view covenants not to compete differently based on whether they grow out of an employment relationship or whether they are made in connection with the sale of a business." *Freeman*, 102 Ark. App. at 82, 281 S.W.3d at 755 (2008). Covenants not to compete in employment contracts are subject to stricter scrutiny than those connected with the sale of a business. *HRR Ark., Inc. v. River City Contractors, Inc.*, 350 Ark. 420, 430, 87 S.W.3d 232, 239 (2002).

A covenant not to compete must be valid as written, as courts will not parse a contract to separate the reasonable provisions from the unreasonable ones. *Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 419, 994 S.W.2d 468, 473 (1999). "It has long been the rule that, when a covenant not to compete is too far-reaching to be valid, the court will not make a new contract for the parties." *Federated Mut. Ins. Co. v. Bennett*, 36 Ark. App. 99, 104-05, 818 S.W.2d 596, 599 (1991) (citing *Rector-Phillips-Morse, Inc. v. Vroman*, 253 Ark. 750, 753, 489 S.W.2d 1, 4 (Ark. 1973)).

Defendants argue that the Agreement, a confidentiality agreement arising out of an employment relationship, is an unreasonable restraint of trade. Specifically, Defendants argue that the Agreement, by its plain terms, covers "all information" provided by Plaintiff to Defendant Deville and vice versa, and that Defendant Deville cannot disclose that information to any other party, with this obligation lasting forever.

Defendants point the Court to *City Slickers, Inc. v. Douglas*, in which the Arkansas Court of Appeals found a confidentiality agreement to be unenforceable. 73 Ark. App. at 72, 40 S.W.3d at 811. The *City Slickers* confidentiality agreement prevented the covenantor, for a period of five years, from disclosing to any party "all information [he] [saw,] hear[d], [came] in contact with or otherwise gain[ed] knowledge of, in connection with [his] employment." *Id.* The appellate court

9

reasoned that, by its terms, the challenged confidentiality agreement improperly prevented the covenantor from using his experience and knowledge gained during his employment in any future endeavors. *Id.* Thus, the appellate court affirmed the lower court's ruling that the challenged confidentiality agreement "constituted an unreasonable and unlawful restraint of trade, and that it was an overly broad covenant not to compete masquerading as a confidentiality and nondisclosure agreement." *Id.*

Defendants argue that the Agreement in this case is far broader than the confidentiality agreement in *City Slickers*, which had a five-year limitation period and prevented the employee from disclosing all information that he came in contact with during his employment. They argue that the Agreement in this case not only covers "all information" provided by Plaintiff to Defendant Deville, but also vice versa, and that the Agreement has no time limitation at all. Thus, Defendants argue that the Court should find the Agreement unenforceable. Plaintiff offers no response to this argument, other than seemingly arguing that "non-disclosure agreements . . . are generally held to be more valid and in a more favorable light [than non-compete agreements]." (ECF No. 18, p. 2).

The Court agrees with Defendants. Plaintiff's complaint does not allege that Defendant Deville was exposed to any confidential information related to its client list or their prices, but it does allege that he relayed that information to Defendant Volt Power. Giving Plaintiff the benefit of all reasonable inferences, it appears that Plaintiff alleges that it, at some point, gave Defendant Deville confidential information regarding Claiborne Electric. To be sure, an employer has a legitimate desire in seeing that a former employee does not appropriate its customers. *Statco Wireless, LLC*, 80 Ark. App. at 284, 95 S.W.3d at 21. However, any covenant utilized to prevent appropriation of customers must be reasonably drawn, so as to not constitute an unreasonable restraint on trade. *Id.* Plaintiff did not tailor the Agreement in a way that explicitly protected

information related to its customers or pricing, but instead drafted it to cover "all information provided by either party [to the other]." (ECF No. 3, p. 5). Therefore, the Court finds that the Agreement is not reasonably drawn, as it not only bars Defendant Deville from disclosing any trade secrets learned during his employment, but also prevents him from disclosing *any* information, including his experience and knowledge gained during that time. *City Slickers, Inc.*, 73 Ark. App. at 72, 40 S.W.3d at 811 (citing *Witmer v. Ark. Dailies, Inc.*, 202 Ark. 470, 476, 151 S.W.2d 971, 974 (1941)). Moreover, the fact that the Agreement does not state a time limitation, but instead applies forever, further supports a finding that it is unenforceable. *See id.* (finding unenforceable a confidentiality agreement with a five-year limitation period). Bearing in mind that Plaintiff does not offer a substantive response or argument regarding the Agreement's enforceability, the Court finds that the Agreement constitutes an unreasonable and unlawful restraint of trade and, thus, is unenforceable.

Plaintiff's breach-of-contract claim is based only on the existence of the Agreement. In light of the Court's above finding that the Agreement is unenforceable, the Court finds that, after taking all well-pled allegations as true and construing all reasonable inferences in Plaintiff's favor, Plaintiff's breach-of-contract claim fails because its essential elements are not met. Specifically, Plaintiff has not alleged facts satisfying the requisite element that a valid and enforceable contract exists between the parties. *See Rabalaias*, 284 Ark. at 528-29, 683 S.W.2d at 921. Accordingly, Plaintiff fails to state a breach-of-contract claim upon which relief may be granted and that claim should be dismissed.

### 2. Tortious Interference

Plaintiff's complaint alleges that Defendant Volt Power tortiously interfered with the contract between Plaintiff and Defendant Deville by accepting confidential information from

Defendant Deville. Defendants argue that this claim fails and should be dismissed because there is no valid, underlying contract between Plaintiff and Defendant Deville.

In Arkansas, the elements of tortious interference are: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) resultant damage to the party whose relationship or expectancy has been disrupted; and (5) improper conduct by the interfering party. *Ballard Grp., Inc. v. BP Lubricants USA, Inc.*, 2014 Ark. 276, 14, 436 S.W.3d 445, 454 (2014). Moreover, some third party must be involved for a tortious-interference claim to lie. *Id.*

Defendants argue that the first essential element of a tortious-interference claim—the existence of a valid contractual relationship or expectancy—cannot be shown in this case. Specifically, Defendants argue that the Agreement, which Plaintiff bases its claims on, is unenforceable and, thus, there is no valid contractional relationship or expectancy. Defendants conclude that Plaintiff's tortious-interference claim fails because its essential elements are not satisfied. Plaintiff does not respond to this argument, other than to say that whether tortious interference occurred is a fact-based determination not ripe for a decision prior to a Rule 26(f) report being filed.

The Court agrees with Defendants and finds Plaintiff's argument is misplaced. As previously determined above, the Agreement is an unreasonable restraint of trade and, thus, is unenforceable. The Court has also determined above that Rule 26(f) presents no barrier to the instant Rule 12(c) motion. Thus, for the above-stated reasons, and after taking all well-pled allegations as true and construing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff's tortious-interference claim fails because it has not alleged facts demonstrating all

essential elements of the claim. Specifically, Plaintiff has not demonstrated the existence of a valid contractual relationship or business expectancy. Accordingly, Plaintiff fails to state a tortious-interference claim upon which relief may be granted and that claim should be dismissed.

### 3. Conversion

Plaintiff's complaint alleges that Defendants converted Plaintiff's confidential information for their own use and benefit. Defendants argue that this claim fails and should be dismissed because there is no valid, underlying contract between Plaintiff and Defendant Deville barring the disclosure of information and, thus, Defendants' alleged actions cannot be considered "wrongful."

"[T]o establish liability for the tort of conversion, a plaintiff must prove that the defendant wrongfully committed a distinct act of dominion over the property of another, which is a denial of, or is inconsistent with, the owner's rights." *Integrated Direct Mktg., LLC v. May*, 2016 Ark. 281, 3, 495 S.W.3d 73, 75 (2016). "Stated another way, conversion is a common-law tort action for the wrongful possession or disposition of another's property." *Id.*

Defendants argue that the Agreement is unenforceable and that Defendant Deville was not bound by any confidentiality obligation when he left Plaintiff to work for Defendant Volt Power. For this reason, Defendants argue that their alleged actions cannot be considered "wrongful" and, thus, Plaintiff's conversion claim fails and should be dismissed. Plaintiff does not respond to this argument.

The Court agrees with Defendants. As discussed above, the Agreement is an unreasonable restraint of trade and is unenforceable. Without the Agreement, nothing prevented Defendant Deville from disclosing the information he came into contact with while employed with Plaintiff. Therefore, Defendants' alleged actions cannot be considered "wrongful," an essential element of the tort of conversion in Arkansas. *See id.* ("[A] plaintiff must prove that the defendant wrongfully

committed a distinct act of dominion over the property of another."). Accordingly, after taking all well-pled allegations as true and construing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff fails to state a conversion claim upon which relief may be granted and that claim should be dismissed.

## IV.  CONCLUSION

For the above-stated reasons, the Court finds that Defendants' Motion for Judgment on the Pleadings (ECF No. 15) should be and hereby is **GRANTED**.  Plaintiff's complaint is hereby **DISMISSED WITH PREJUDICE**.  A separate judgment of even date shall issue.

**IT IS SO ORDERED**, this 20th day of February, 2019.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge